184

In the Matter of the Liquidation of LAWYERS TITLE AND GUARANTY COMPANY.

In the Matter of the Application of MORTGAGE COMMISSION OF THE STATE OF NEW YORK for an Order Adjudicating the Validity and the Right to Priority of Payment of a Trust Claim of All of the Holders of Certificates of Mortgage Number 253406, of Lawyers Title and Guaranty Company, in the Sum of $10,104.29, and for Other Relief. (465 OCEAN AVE., BROOKLYN, N. Y.)

Supreme Court, Additional Special Term, New York County, February 2, 1937.

*Benjamin J. Rabin* [*Solomon J. Heifetz* of counsel], for the Mortgage Commission of the State of New York, for the motion.

*Herman Berniker* [*Joseph Lapidus* of counsel], for the Superintendent of Insurance, as liquidator of the Lawyers Title and Guaranty Company, opposed.

FRANKENTHALER, J. This application by the Mortgage Commission against the liquidator of Lawyers Title and Guaranty Company involves the propriety of various payments made by the title company to itself both before and after rehabilitation. It is conceded that $6,676.75 was wrongfully applied by the company to reimburse itself for payments of interest previously made by it to certificate holders. In so far as the present motion questions the company's payment to itself of the sum of $410.13 as a premium for the five and one-half months immediately preceding March 15, 1933, it has been withdrawn. This leaves for consideration only the company's right to pay to itself $3,017.41 as interest on the unsold equity in the mortgage retained by it.

The certificates in the instant case assign to each holder an undivided share in the bond and mortgage " equal and coordinate with all other shares assigned or *retained* by the Company." (Italics the court's.) This language expressly places the company's retained interest on a par with certificates issued by it. (See *Matter of Lawyers Title & Guaranty Co.* [*236 West 70th St.*], 157 Misc. 516.) The claim is, however, made by the moving party that, notwithstanding this provision, the company could not properly pay interest to itself upon its retained equity as long as interest payable to certificate holders or taxes on the mortgaged property were in arrears. The certificates themselves contain no language making the company's express right to share equally with certificate

holders conditional upon the absence of such arrears. If the provision for a *pro rata* distribution in respect to the company's retained share were dependent upon the non-existence of a default upon its guaranty of principal and interest it would be wholly meaningless and superfluous for, even without any such provision, certificate holders could not question the company's right to share in the interest or principal received so long as it was making full payment of interest and principal to them in accordance with its guaranty. The existence of arrears of *interest* does not, therefore, affect the company's right to share equally with certificate holders.

A different situation is, however, presented as to payments made by the company to itself while *taxes* upon the mortgaged property were in arrears. As this court has already pointed out (*Matter of N. Y. Title & Mort. Co.* [*Series F-1*], 162 Misc. 117): " It was the company's duty to apply the rents received under the rent assignments to the payment of tax liens before using any of the funds to meet interest payments and thus discharge or reduce its own obligation upon its guaranties." Had it applied rents received by it to the payment of tax arrears instead of to the payment of interest to certificate holders and itself, the prior lien for unpaid taxes, to which the certificate holders' undivided interest in the mortgaged premises was subject, would have been reduced by the amount paid to the company on its proportionate share, as well as by the amount paid to the certificate holders. The company's failure to pay the taxes has, therefore, prejudiced the certificate holders by leaving their interest in the security subordinate to a tax lien which should have been reduced or extinguished by the payments improperly made (1) to the certificate holders in reduction of the company's liability on its guaranty, and (2) to the company on its retained equity. The provision giving the company the right to share co-ordinately with certificate holders applies only to payments *properly* made on account of interest or principal, not to payments which should rightfully have been used in extinguishment, complete or partial, of tax liens. It follows that the payments made by the company on its retained equity, while the mortgaged premises were subject to a lien for unpaid taxes, were improper. There is, however, one exception to this statement, viz., a payment of $1,025.20 made while the rules and regulations of the Superintendent of Insurance were in force. The " interpretations " of these rules and regulations, issued by the Superintendent, provided that " where there are such arrears of taxes, 1/4 of such collections shall be set aside for the payment of any existing arrears or as a reserve for the payment of accruing taxes when no other adequate provision has been made for such taxes *and the balance*

*distributed* less a *pro rata* portion of 1/2 of 1 per cent per annum premium." (Italics the court's.) The rules and regulations thus authorized payments of interest despite the existence of some tax arrears. They were issued by the Superintendent as head of the Insurance Department and not as rehabilitator or liquidator of the company and they were, therefore, of general application. To the extent that the rules and regulations permitted title companies to pay interest to certificate holders before extinguishing all tax arrears they likewise permitted it to pay interest to itself on its retained equity which had been placed on an equal footing with certificates by the express language of the latter.

A question still remains as to the propriety of the remedies sought by the petitioner. The moving party asks that the liquidator be directed to remove from its general funds the amount wrongfully paid to itself by the company and to deposit the same in a special account, to remain until the total of all trust claims properly asserted against the general funds can be ascertained with reasonable certainty. The liquidator opposes this segregation on the ground that a number of similar segregations already made have so seriously depleted the company's free cash that the proper continuation of the liquidation is threatened and may even become impossible if similar segregations continue to be made. The liquidator states that an application will be made to the court for authority to create a fund of unincumbered free assets of sufficient value, at current appraisals, to provide ample security pending the determination of the total of similar trust claims. He proposes that all claims for improper recoupments be made a lien against this fund. Such an application has since been made and denied (*Matter of Lawyers Title & Guaranty Co.*, 162 Misc. 188), and the order of segregation will, therefore, be granted.

Petitioner also asks that the amount wrongfully paid to itself by the company, plus interest, be declared a lien upon the latter's equity in the mortgage. This relief is proper (*Matter of Lawyers Title & Guaranty Co.*, 157 Misc. 516), except that the lien for interest subsequent to the order of rehabilitation shall be limited in accordance with the court's opinion dated March 21, 1936, in the case cited. (162 Misc. 486.) The contention of the liquidator that the granting of this relief would result in a duplication of security furnishes no adequate reason for denying the application in this respect. The lien on the company's retained equity may prove to be inadequate security and the order of segregation may likewise turn out to be insufficient security by reason of the number of similar trust claims which may be asserted.

Furthermore, the lien is one to which the petitioner is entitled under the authorities. Until paid in full the petitioner is entitled to as many liens as the law permits.

The request for an adjudication contained in paragraph 2 of the notice of motion is likewise proper, except that the amount will be reduced by the $410.13, as to which the motion has been withdrawn, and by the $1,025.20, which the company was permitted to pay to itself under the Superintendent's rules and regulations.

In so far as authority is sought to apply sums received on account of the company's equity in reduction of interest before principal, the motion is denied.

The motion is granted to the extent indicated. Settle order on three days' notice.